# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| EGYPT MUSLISMAH LOVE, | : CIVIL ACTION NO. |
| a/k/a Geneva Ronda Stone, | : 1:14-CV-01351-WSD-JSA |
| Douglas Cnty. ID # 13101353, | : |
|     Plaintiff, | : |
| | : |
| v. | : |
| | : PRISONER CIVIL ACTION |
| SGT. PALMER, | : 42 U.S.C. § 1983 |
| DR. SMITH, | : |
| INVESTIGATOR HIERS, | : |
| SHERIFF VICKTOR HILL, | : |
|     Defendants. | : |

## MAGISTRATE JUDGE'S NON-FINAL
## REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Douglas County Jail, seeks relief under 42 U.S.C. § 1983 for her alleged mistreatment at the Clayton County Jail. Plaintiff's complaint (Doc. 1) was docketed on May 5, 2014; her first amended complaint (Doc. 3) was docketed on May 22; her application for leave to proceed *in forma pauperis* (Doc. 4) was docketed on May 22 and granted on June 26 (Doc. 5); her motions to remove Defendants (Doc. 6) and to add other Defendants (Doc. 7) were docketed on July 8 and 22, respectively, and granted on July 29 (Doc. 8); and her request for an increase in her "monetary settlement relief" (Doc. 9) was docketed on September 4. This matter is now ready for an initial screening.

## I. The Legal Framework

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous when it "has little or no chance of success"—for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives." *Id.*

2

at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

## II. Plaintiff's Pleadings

### A. The Original Complaint

In her original complaint, Plaintiff presents the following allegations. She was severely beaten, kicked and choked by Sgt. Palmer and others on May 23, 2013 upon her intake into the Clayton County Jail. (Doc. 1 at 1-2). When she was taken to a cell, her arm hurt so badly that she was not sure whether or not it was broken, and there was "blood flowing down [her] back." (*Id.* at 2). She was taken to see a nurse but received no treatment; instead, she was told that she was "really crazy" and written up as a mental health patient. (*Id.* at 3).

Plaintiff alleges that she was then taken to a cell in medical, where she was housed for 3 to 4 months with only "30 minutes out of the cell every other day for free time or showers" and where she was forced to eat and sleep with raw sewage on the floor. (*Id.*). She "suffered a miscarriage." (*Id.* at 3-4). The doctor came but did not treat her because she had "refused" treatment by not giving a urine sample. (*Id.* at 4). Someone, it seemed, was poisoning her food. (*Id.*). She was placed in lock down for fighting, although the girl who started the fight was not punished. (*Id.* at 4-5). She spent 19 days in lock down, 5

3

days beyond the "required time." (*Id.* at 5).

### B. The Amended Complaint

In her amended complaint, Plaintiff alleges that Sheriff Vicktor Hill is responsible for making the Clayton County Jail "hands on." (Doc. 3 at 3 (alleging that Sheriff Hill said, " '[O]nce you become an inmate you lose all rights. We can put hands on you as we so choose at any given time, if you [are] right or wrong.' ")). She alleges that whenever Sheriff Hill or the Jail search team was present, the inmates would have to stand with their noses touching the wall, and even the slightest infraction of the rules, such as not forming the end of the toilet paper roll into a V shape for the Sheriff's first name, would cause the search team to throw the inmates onto the floor and "throw[] everything out of the cell, breaking commissary items and rip[p]ing legal mail up, along with pictures, while yelling." (*Id.*). The search team would make the inmates sit on the floor with their legs crossed for hours and make them walk up and down the stairs with their arms behind their backs, which once caused Plaintiff to fall and hit her face on the rail. "One person was kicked with boots." (*Id.* at 4).

Plaintiff alleges that "Sgt. Palmer injured [her] face, ear, hand, arms, head, chest, side, feet, toes [and] legs," and caused her hearing loss; an unnamed search team officer injured her neck and back; and both of them injured her abdomen, causing pain and her

4

miscarriage. (*Id.*). She alleges further that Sheriff Hill ordered that while in segregation inmates are to be served "nutriloaf, which is every meal from that day blended all together, and place[d] into a paper bag twice a day," which diet she alleges she also received after her release into the Clayton County Jail general population from July 2013 through October or November 2013. (*Id.*). She alleges that while in medical, from on or about May 23, 2013 until sometime in July 2013, she suffered "food poisoning, [a] miscarriage, sleeping and eat[ing her] meals in feces, [and] not showering or coming out [of] the cell days at a time." (*Id.*). She seeks $4 million in damages. (*Id.*; *but see* Doc. 9 (increasing her "monetary settlement relief" request to $44 million)).

### C. Motion to Add Defendants

In her motion to add Dr. Smith, Sheriff Hill and Investigator Hiers as Defendants, Plaintiff alleges that it was Dr. Smith who refused her repeated requests for medical treatment after her arrival at the Clayton County Jail on May 23, 2013. (Doc. 7 at 2). She alleges that he demanded that she give a urine sample before receiving treatment, even though she explained to him that her right ear was ringing so loudly that she could not hear out of it, her finger and hand may have been fractured, and she was having "muscular contraction[s] throughout [her] body." (*Id.* at 2). After Plaintiff failed to give the urine sample, Dr. Smith would not respond to her many requests for medical treatment, walking

5

past her cell without stopping and stating loudly, "You refuse." (*Id.* at 2-3). Plaintiff learned Dr. Smith's name when he visited her at "her current location, the Douglas County Jail, on July 15, 2014." (*Id.* at 3).

Plaintiff alleges that Investigator Hiers arrested her on May 23, 2013, without probable cause or a warrant, "out of personal spite" and a desire for retaliation. (*Id.* at 4-5). She alleges that Sheriff Hill held her thereafter "around about 6 months on a bench warrant," without a court appearance and without bond being set, until in October 2013 all the charges brought by Hiers were dismissed. (*Id.* at 4). "This is how the bench warrant was cleared. There [were] around about 30 charges and [she] was facing 90 to 100 years in prison. For crimes that never occur[re]d." (*Id.*).

Plaintiff also alleges that Sheriff Hill "allowed [her] home to be destroyed and ransack[ed] by his [deputy] sheriffs" when they came to her home to serve a warrant, arrested her, and then left her doors unlocked. (*Id.* at 5). Earlier, she had been arrested at her home at a different address when the Sheriff's deputies came to serve a warrant; destroyed one of her windows, through which later someone entered and "took [her] things"; and battered her in the chest and stomach even though she was pregnant. "[Her] baby later died in the hospital." (*Id.* at 5-6).

### III. Discussion

6

### A. Sergeant Palmer: Excessive Force

"Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). "However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Id.* In determining whether the use of force against a prisoner or detainee has violated the Eighth Amendment, a court must weigh the following factors: (1) the need for the use of force, (2) the relationship between the need and the amount of force, (3) the threat that the prison official reasonably perceived, (4) the efforts made to temper the severity of the force used, and (5) the extent of the prisoner's injuries. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Skrtich v. Thornton*, 280 F.3d 1295, 1304 (11th Cir. 2002) (noting that "[t]he law of excessive force in this country is that a prisoner cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain").

Plaintiff's allegations that she was beaten wantonly by Sgt. Palmer and other unnamed officers at the Clayton County Jail, and suffered severe injuries to her arm and a miscarriage as the result of that beating, are sufficient to allow her excessive force

7

claims to proceed against Sgt. Palmer.

### B. Investigator Hiers: False Arrest

"A warrantless arrest made without probable cause violates the Fourth Amendment and is actionable under § 1983, but an arrest made with probable cause constitutes an absolute bar to a § 1983 action for false arrest." *Vickers v. Georgia*, 567 Fed. Appx. 744, 2014 U.S. App. LEXIS 9682, at *4 (11th Cir. 2014) (citing *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996)). "An officer has probable cause for an arrest when the arrest is 'objectively reasonable based on the totality of the circumstances.' " *Id.* (quoting *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003)). Here, because only Plaintiff's version of events is before the Court, which is obliged to accept her well-pleaded facts as true, *see Iqbal*, 556 U.S. at 678, it appears that she has at least *stated* a plausible claim that she was arrested without probable cause, based on her allegations that all of the charges brought against her by Hiers were later dismissed. Her false arrest claims against Investigator Hiers are sufficiently well-pleaded to allow them to proceed.

### C. Dr. Smith: Deliberate indifference to a Serious Medical Need

The Eighth Amendment prohibits indifference to a convicted prisoner's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotations omitted). "To

8

AO 72A
(Rev.8/82)

prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *McDaniels v. Lee*, 405 Fed. Appx. 456, 458 (11th Cir. 2010) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009)). "A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (internal quotations omitted). "To satisfy the subjective element of [a] deliberate indifference [claim, a] . . . Plaintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotations omitted) (noting that subjective knowledge requires that defendant " 'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [] must also draw the inference' " (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added in *Bozeman*)); *see also Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010).

"A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide

9

care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (noting that "prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain"). In determining whether a delay in treatment rises to the level of deliberate indifference, relevant factors include: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

Plaintiff's allegations that Dr. Smith neglected her medical needs while she experienced severe pain, and a miscarriage, are sufficient to allow her deliberate indifference claims against Dr. Smith to proceed.

### D. <u>Sheriff Hill: Conditions of Confinement</u>

For there to be a violation of the Eighth Amendment constituting cruel and unusual punishment, "[f]irst, there must be, objectively speaking, conduct by public officials sufficiently serious to constitute a cruel or unusual deprivation—one denying the minimal civilized measure of life's necessities. Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000) (citations and internal quotations

omitted). "Negligence does not suffice to satisfy this standard." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotations omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (noting that "[t]he Constitution . . . does not mandate comfortable prisons") (internal quotations omitted). But to prevail on an Eighth Amendment challenge to the conditions of confinement, a prisoner "need not await a tragic event before seeking relief, [but] must at the very least show that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety." *Chandler*, 379 F.3d at 1289 (citation and internal quotations omitted). Nevertheless, a prison official cannot be found deliberately indifferent unless he or she "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). And "[a] § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. Recovery of damages is limited to those injuries proved to be caused by the defendants." *Troupe v. Sarasota County*, 419 F.3d 1160, 1165 (11th Cir. 2005) (citation omitted).

Moreover, even if Plaintiff has stated a viable claim regarding the conditions of her

11

confinement at the Clayton County Jail, in order to also state a claim for relief against Sheriff Hill in his individual capacity, she must present well-pleaded facts establishing a plausible claim that, as a supervisor, either (1) he "personally participate[d] in the alleged unconstitutional conduct" or (2) "there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Sheriff Hill may not be held liable simply because he is a supervisor. *See Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (*en banc*) ("Supervisory officials cannot be held liable [under § 1983] for the acts of employees solely on the basis of respondeat superior." (internal quotations omitted)).

Plaintiff can show a causal connection between the actions or inaction of Sheriff Hill and the alleged violations of her constitutional rights by showing that either (1) Sheriff Hill was on notice of a history of widespread abuse and failed to take corrective action; or (2) he had a custom or policy that resulted in the alleged violations; or (3) the facts support "an inference that [he] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360. But "[t]he standard by which a supervisor [such as Sheriff Hill] is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* And " '[t]he deprivations that constitute widespread abuse

12

sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.' " *Hayes v. Sec'y*, 563 Fed. Appx. 701, 703-04 (11th Cir. 2014) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)).

Plaintiff has alleged the mistreatment of Jail inmates, including herself, by Sgt. Palmer, as well as by unnamed members of the Clayton County Jail search team, which mistreatment she attributes to Sheriff Hill's "hands on" policy. (*See* Doc. 3 at 3). But Plaintiff's allegation that Sheriff Hill violated her constitutional rights by adopting a "hands on" policy at the Jail does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Iqbal*, 556 U.S. at 678. A "hands on" policy is not the equivalent of an "excessive force" policy, and Plaintiff has not alleged sufficient facts to state a plausible claim that Sheriff Hill ever adopted or condoned, either formally or informally, a policy of the latter type. The same is true regarding her claims against Sheriff Hill arising from her two earlier arrests. (*See* Doc. 7 at 5-6). Plaintiff also alleges inhumane conditions of confinement at the Clayton County Jail, requiring among other things that she eat and sleep in a cell flooded with raw sewage (*see* Doc. 1 at 3), but she does not attempt to connect those conditions to any action, policy, custom or indifference on the part of Sheriff Hill.

13

Finally, to the extent that Plaintiff sues Sheriff Hill in his official capacity, she may not obtain the monetary relief that she seeks from Hill because he enjoys Eleventh Amendment immunity from a § 1983 claim for money damages or other retrospective relief brought against him in his official capacity. *See Purcell v. Toombs County*, 400 F.3d 1313, 1325 (11th Cir. 2005) (concluding that a Georgia Sheriff "functions as an arm of the State [not the County] when promulgating policies and procedures governing conditions of confinement" at a county jail, and therefore the defendant sheriff was "entitled to Eleventh Amendment immunity from [a] suit [for money damages] in his official capacity"). The claims in the Amended Complaint against Sheriff Hill therefore must be dismissed. However, because the Court cannot say that Plaintiff could allege no set of facts that might state an appropriate claim against Sheriff Hill, the Court recommends that such dismissal be without prejudice, and accompanied with leave to amend to re-state the claims against Sheriff Hill pursuant to the legal standards outlined above within 21 days of dismissal.

## IV. Conclusion

**IT IS RECOMMENDED** that Plaintiff's false arrest claims against Investigator Hiers, her excess force claims against Sgt. Palmer, and her medical deliberate indifference claims against Dr. Smith be **ALLOWED TO PROCEED**, and that her claims against

14

Sheriff Hill be **DISMISSED WITHOUT PREJUDICE**, with **LEAVE TO AMEND** granted to allow any re-statement of the claims against Sheriff Hill within 21 days of dismissal.

Should the District Court allow one or more of Plaintiff's claims to proceed, the Clerk is **DIRECTED** to resubmit this matter to the undersigned for further proceedings.

**SO RECOMMENDED** this 14th day of October, 2014.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)