**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| EGYPT MUSLISMAH LOVE, | : | CIVIL ACTION NO. |
| a/k/a Geneva Ronda Stone, | : | 1:14-CV-01351-WSD-JSA |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| SGT. PALMER, DR. SMITH, | : | PRISONER CIVIL ACTION |
| INVESTIGATOR HIERS, | : | 42 U.S.C. § 1983 |
| SHERIFF VICKTOR HILL, | : | |
|     Defendants. | : | |

**MAGISTRATE JUDGE'S ORDER
AND REPORT AND RECOMMENDATION**

Plaintiff has filed a complaint (Doc. 1), first amended complaint (Doc. 3), motion to add Defendants (Doc. 7), and two additional amended complaints (Doc. 14, 15), as well as a motion for appointment of counsel (Doc. 16) and a motion for discovery (Doc. 19).  After reviewing Plaintiff's first three pleadings (Docs. 1, 3, 7), the undersigned recommended allowing her claims to proceed against Sgt. Palmer, Dr. Smith and Investigator Hiers, and also recommended allowing Plaintiff to amend her claims against Sheriff Hill.  (Doc. 10).  The District Judge has adopted that recommendation (Doc. 20), noting that in the meantime Plaintiff has filed the two additional amended complaints noted above (Docs. 14, 15), in which she restates and expands upon her claims against Sheriff Hill.

## I.   Plaintiff's *In Forma Pauperis* Status

On June 26, 2014, the Court granted Plaintiff, who was a pretrial detainee at the time, leave to proceed *in forma pauperis*, as a prisoner, without payment of an initial partial filing fee.  (Doc. 5).  On November 18, 2014, the Court received notice that Plaintiff was no longer incarcerated.  (Doc. 17).  Plaintiff has paid no portion of the $400.00 filing and administrative fees for this case.  Plaintiff is therefore **ORDERED** to either pay the $400.00 fees or file a financial application for leave to proceed *in forma pauperis* as a non-prisoner.  The Clerk is **DIRECTED** to send the appropriate financial application to Plaintiff along with a copy of this Order.

## II.   Plaintiff's Restated Claims Against Sheriff Hill

### A.   The Legal Framework

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).  Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which

2

relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief.   A complaint is frivolous when it "has little or no chance of success"—for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted).   A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives." *Id.* at 678-79.   To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

### B.   Plaintiff's Amended Claims Against Sheriff Hill Regarding the Use of Force Against Her and the Conditions of Her Confinement

In her first amended complaint (Doc. 14), Plaintiff raises the following allegations against Sheriff Hill with respect to the use of force against her at the Clayton County Jail ("Jail") and the conditions of her confinement there.   She asserts

3

that the Sheriff has "formally adopted an excessive force policy" for the Jail "as a form of punishment for all inmates," and when his deputies severely beat and injured her at the Jail on May 23, 2013, he knew that they had been using excessive force unlawfully, based on "a history of [] widespread abuse," but "he refuse[d] to take action to stop" them. (Doc. 14 at 1). Later, a Jail officer who had concluded that Plaintiff was failing to cooperate with the officer told Plaintiff that "I should hit you in the face, you know I can beat your A--, my sheriff said that's the punishment for coming to Jail." (*Id.* at 3). Plaintiff states that she witnessed 5 beatings while detained in the medical department, which "can [be] viewed from the Jail camera." (*Id.*).

Plaintiff alleges further that Sheriff Hill's policies and/or his failure to monitor known problems caused Plaintiff to eat and sleep in a cell with raw sewage and to be deprived of outside exercise for three or four months while she was at the Jail. (*Id.* at 1-2). "Sheriff Hill is very much so aware of these events, and was personally involved in decision making, arrangements for maintenance to fix the toilets etc. I'm sure there is data loged [sic] in regard to these events." (*Id.* at 2). An officer told Plaintiff that Sheriff Hill stated: "No one is allowed outside while in medical, I am aware of the toilets running over, that's a problem for maintenance not me, I received [Plaintiff's] letters" complaining about these matters. (*Id.*). Plaintiff asserts that there is video

4

footage showing Sheriff Hill looking into cells flooded with raw sewage during the period from May to September 2013, when Plaintiff was detained at the Jail.  (*Id.*).

She claims that Sheriff Hill failed to provide her cell with adequate heat or to provide her with warm clothes or blankets and "allowed [her] to get food poison[ing] by the medical personnel or officers putting something in [her] food," and when informed of these matters stated that it was "simply not his problem."  (*Id.* at 3). Plaintiff also alleges that Sheriff Hill "did not provide medical care for [her] injuries even after he learned of the physical abuse" (*id.* at 1); and, finally, he had a policy of serving inmates, including Plaintiff, two small portions of "nutriloaf" per day, which provided inadequate nutrition (*id.* at 6).

For there to be a violation of the Eighth Amendment constituting cruel and unusual punishment, "[f]irst, there must be, objectively speaking, conduct by public officials sufficiently serious to constitute a cruel or unusual deprivation—one denying the minimal civilized measure of life's necessities.  Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish."[1] *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000) (citations

_____

[1]Although Plaintiff was a pre-trial detainee and not a convicted prisoner during the relevant time period, the same standard applies to both.  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (noting that although "[c]laims involving the

and internal quotations omitted).  "Negligence does not suffice to satisfy this standard." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotations omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (noting that "[t]he Constitution . . . does not mandate comfortable prisons") (internal quotations omitted).  But to prevail on an Eighth Amendment challenge to the conditions of confinement, a prisoner "need not await a tragic event before seeking relief, [but] must at the very least show that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety." *Chandler*, 379 F.3d at 1289 (citation and internal quotations omitted).  Nevertheless, a prison official cannot be found deliberately indifferent unless he or she "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  And "[a]

---

mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause . . . ., the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees"); *see also Keith v. Dekalb County*, 749 F.3d 1034, 1044 n.35 (11th Cir. 2014) (same).

AO 72A
(Rev.8/82)

§ 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. Recovery of damages is limited to those injuries proved to be caused by the defendants." *Troupe v. Sarasota County*, 419 F.3d 1160, 1165 (11th Cir. 2005) (citation omitted).

In addition, even if Plaintiff has stated a viable claim regarding the conditions of her confinement at the Jail, in order to also state a claim for relief against Sheriff Hill in his individual capacity, she must present well-pleaded facts establishing a plausible claim that, as a supervisor, either (1) he "personally participate[d] in the alleged unconstitutional conduct" or (2) "there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Sheriff Hill may not be held liable simply because he is a supervisor. *See Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (*en banc*) ("Supervisory officials cannot be held liable [under § 1983] for the acts of employees solely on the basis of respondeat superior." (internal quotations omitted)).

Plaintiff can show a causal connection between the actions or inaction of Sheriff Hill and the alleged violations of her constitutional rights by showing that either (1) Sheriff Hill was on notice of a history of widespread abuse and failed to take corrective action; or (2) he had a custom or policy that resulted in the alleged

7

violations; or (3) the facts support "an inference that [he] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360. But "[t]he standard by which a supervisor [such as Sheriff Hill] is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* And " '[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.' " *Hayes v. Sec'y*, 563 Fed. Appx. 701, 703-04 (11th Cir. 2014) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)).

Plaintiff has alleged that Sheriff Hill not only was aware of, and did nothing to remedy, the widespread use of excessive force against Jail inmates, including Plaintiff, but that he officially condoned the practice because, as Sheriff Hill supposedly told a Jail official, "that's the punishment for coming to jail." (Doc. 14 at 1-3). Plaintiff also alleges that Sheriff Hill was aware that raw sewage was present in the area of the Jail to which Plaintiff was confined for several months, that Plaintiff was denied the opportunity for exercise during that time, and that she was provided inadequate and even harmful nutrition, inadequate clothing and blankets to keep her warm, and inadequate medical care—and he did nothing to remedy these matters. These

8

allegations, taken as true, are sufficient to state plausible claims against Sheriff Hill in his individual supervisory capacity regarding the use of force against Plaintiff at the Jail and also regarding her conditions of confinement there, except for her alleged lack of access to adequate medical care.  Plaintiff has alleged specific facts with respect to both the Sheriff's use-of-force policy at the Jail and his knowledge of, and failure to remedy, the overflowing toilets in Plaintiff's cell and Plaintiff's lack of opportunity for outdoor exercise, lack of adequate clothing and bedding, and lack of adequate and safe nutrition.  (*See id.* at 1-3, 6).  Plaintiff has offered only speculation with respect to her allegation that the Sheriff is personally responsible for her alleged lack of adequate medical care.  (*See id.* at 1).  Speculation, however, is insufficient to state a plausible claim for relief.  *See Iqbal*, 556 U.S. at 678-79.

### C.    Plaintiff's Prolonged Detention Without a Court Appearance

Plaintiff also alleges that Sheriff Hill illegally detained her for 167 days on a bench warrant before she was allowed to go to court, at which time all charges against her were dismissed.  (Doc. 14 at 4).  Plaintiff claims that there is a "widespread practice" at the Jail—"although not authorized by written law, and the municipal policy, [that] causes a constitutional deprivation and is so permanent and well-settled as to constitute usage and custom with the force of law"—of failing to insure that

9

pretrial detainees are provided with a prompt arraignment or other court appearance. (Doc. 15 at 1-2). She attributes this practice to a "single decision by Sheriff Hill who possesses final authority to establish municipal policy," which practice she contends is actionable against both the Sheriff and Clayton County under the Georgia Tort Claims Act and the United States Constitution. (*Id.*).

At least one court in this Circuit has held that "a pre-trial detainee has a substantive-due-process right to an initial appearance within a reasonable time after arrest upon a valid warrant." *Jackson v. Hamm*, 78 F. Supp. 2d 1233, 1241 (M.D. Ala. 1999).

> [C]ourts have grappled with the question of what length of detention combined with what circumstances would constitute an unconstitutional deprivation of liberty in violation of the Fourteenth Amendment. Courts have tended to apply a "shocks the conscience" rationale in the cases, such that a deprivation of liberty pursuant to a valid arrest warrant will only be found unconstitutional if the totality of the circumstances, particularly the length of the detention, would shock the conscience.

*Sanchez v. Campbell*, No. 4:09-CV-420-SPM-WCS, 2010 U.S. Dist. LEXIS 11679, at *6 (N.D. Fla. Feb. 10, 2010).[2]

---

[2]The *Sanchez* court cites the following caselaw for support:

*Afeworki v. Thompson*, 2007 U.S. Dist. LEXIS 65385, 2007 WL 2572293 (W.D. Wash. 2007) (holding that seventeen day delay between arrest and first appearance does not shock the conscience); *Pledger v. Reece*, 2005

10

Plaintiff, however, has not alleged *facts* sufficient to make out a Fourteenth Amendment substantive due process claim against Sheriff Hill in his individual supervisory capacity regarding her 167-day detention without a court appearance. She has implicated Sheriff Hill personally in her prolonged detention only by making conclusory assertions that he decided "not to take any action to alleviate [the] problem of detecting missed arraignments" and that he "knew that some inmates could not communicate their plight or were out of touch with their families or lawyers and that from time to time some inmates remained incarcerated for period of time [sic] because they missed their arraignment." (Doc. 15 at 1). These conclusory assertions regarding what Sheriff Hill decided or knew are insufficient to state a plausible claim for relief against the Sheriff in his individual supervisory capacity. *See Iqbal*, 556 U.S. at 678-

---

U.S. Dist. LEXIS 40840, 2005 WL 3783428 (W.D. Ark. 2005) (holding that fifteen day delay in release does not create Due Process violation); *Panfil v. City of Chicago*, 45 Fed. Appx. 528 (7th Cir. 2002) (holding that there was no unconstitutional deprivation where person was detained for four days). *Cf. Coleman v. Frantz*, 754 F.2d 719 (7th Cir. 1985) (holding that eighteen day detention without appearance before magistrate constitutes unconstitutional deprivation of liberty); *Jackson v. Hamm*, 78 F. Supp.2d 1233 (M.D. Ala. 1999) (finding that twenty-eight day detention prior to first appearance violated Substantive Due Process, but such right not clearly established in Eleventh Circuit for enforcement pursuant to § 1983).

*Sanchez*, 2010 U.S. Dist. LEXIS 11679, at *6-7.

11

79.[3]

_____

[3]The plaintiff in *Iqbal* alleged that he was unconstitutionally subjected to harsh conditions of confinement on account of his race, religion and national origin. 556 U.S. at 666-68. He sued Attorney General John Ashcroft and FBI Director Robert Mueller, who were not personally involved in his arrest or confinement. He alleged, rather, that Ashcroft was the "principal architect" of a discriminatory policy that Mueller adopted and executed, and that both defendants "knew of, condoned, and willfully and maliciously agreed to subject" the plaintiff to unconstitutionally harsh conditions of confinement. *Id.* at 680-81. The Supreme Court stated that "[t]hese bare assertions . . . amount[ed] to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim." *Id.* at 681 (internal quotations omitted). "It [thus wa]s the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitle[d] them to the presumption of truth." *Id.* Plaintiff's allegations here—that Sheriff Hill "knew" that some Jail inmates would miss their arraignments and decided not to do anything about the problem—are no less conclusory. *See Nelson v. City of L.A.*, No. CV 11-5407-PSG, 2014 U.S. Dist. LEXIS 159782, at *28-29 (C.D. Cal. Sept. 25, 2014) (finding that "conclusory allegations that [] Defendants somehow caused the shooting . . ., *unsupported by any facts*, are insufficient to state an excessive-force claim" (emphasis added), and citing *Irvin v. Baca*, 472 Fed. App'x 773, 774 (9th Cir. 2012), for "finding that district court properly dismissed excessive-force claim against Sheriff Baca in individual capacity when plaintiff 'failed to allege facts sufficient to show that Baca was personally involved in the alleged constitutional violations' ")), *adopted by* 2014 U.S. Dist. LEXIS 159781 (C.D. Cal. Nov. 13, 2014); *Thomas v. Phila. Hous. Auth. & Carl Greene*, No. 11-0224, 2011 U.S. Dist. LEXIS 98274, at *14 (E.D. Pa. Aug. 30, 2011) (finding that plaintiff's "First Amendment retaliation claim against Greene in his individual capacity is deficient because she has not alleged facts sufficient to infer his personal involvement in the alleged retaliation nor facts supporting a causal connection between the protected speech and the retaliation," i.e., plaintiff "has not alleged sufficient facts from which it can be inferred that Greene personally directed the conduct or knew of and condoned or acquiesced to it"). Plaintiff's conclusory allegations regarding her prolonged detention without a court appearance stand in sharp contrast to her *factual* allegations regarding Sheriff Hill's knowledge of and involvement in the use-of-force policy at the Jail and the conditions of Plaintiff's confinement there. (*See* Doc. 14 at

Nor has Plaintiff stated a viable claim against the Sheriff in his official capacity or against Clayton County. When a Georgia Sheriff functions as an arm of the State, he enjoys Eleventh Amendment immunity from a § 1983 claim for money damages or other retrospective relief brought against him in his official capacity. *See Purcell v. Toombs County*, 400 F.3d 1313, 1325 (11th Cir. 2005) (concluding that a Georgia Sheriff "functions as an arm of the State [not the County] when promulgating policies and procedures governing conditions of confinement" at a county jail, and, therefore, the Sheriff was "entitled to Eleventh Amendment immunity from [a] suit [for money damages] in his official capacity"). When setting Jail policy regarding the treatment of pretrial detainees, in particular with regard to the timing of their initial court appearances, the Sheriff functions as an arm of the State, not the County.

The plaintiff in *Grech v. Clayton County*, 335 F.3d 1326 (11th Cir. 2003) (*en banc*), for example, "brought a § 1983 action. . . . alleg[ing] that his constitutional rights were violated when he was arrested in 1998 pursuant to a 1985 bench warrant that the [Clayton County] Sheriff's Office failed to remove from" Georgia's Criminal Justice Information System ("CJIS"). *Id.* at 1328. The plaintiff alleged that

> defendant Clayton County's 'failure to ensure adequate training, policies,

---

1-3).

13

> procedures, practices, and customs regarding the use of the GCIC [("Georgia Crime Information Center")] Computer System constituted a pattern or practice of deliberate indifference and led directly and foreseeably to [his] arrest' . . . . [and] that Clayton County had a custom and policy of permitting errors in warrant information to occur and to remain on the CJIS systems and of failing to prevent invalid criminal warrants from being on those systems.

*Id.*  In ultimately deciding that the plaintiff could not sue Clayton County for these alleged violations, the *Grech* court noted that "Georgia law points to the conclusion that sheriffs are not county policymakers as to their law enforcement functions," *id.* at 1343, but it was still necessary to "consider the particular law enforcement conduct of the sheriff in issue, which is the sheriff's entry and validation of warrants on the CJIS systems and his training and supervision of employees in that regard." *Id.* at 1344. The court concluded that the sheriff was not a county policymaker with respect to the specific function at issue.

> In Georgia, a county has no authority and control over the sheriff's law enforcement function. Clayton County does not, and cannot, direct the Sheriff how to arrest a criminal, how to hire, train, supervise, or discipline his deputies, what polices to adopt, or how to operate his office, much less how to record criminal information on, or remove it from, the CJIS systems involved in this case. Instead, the sheriff acts on behalf of the State in his function as a law enforcement officer and keeper of the peace in general and in relation to the CJIS systems in particular.

*Id.* at 1347 (footnote omitted).  In short, "the Clayton County Sheriff is not a county

14

policymaker under § 1983 for his law enforcement conduct and policies regarding warrant information on the CJIS systems or the training and supervision of his employees in that regard." *Id.* at 1348.  Likewise, Plaintiff here may not proceed against Sheriff Hill in his official capacity, or against Clayton County, on her claim that her substantive due process rights under the Fourteenth Amendment were violated by the delay in her initial court appearance.[4]

### D.     The Loss and/or Destruction Of Plaintiff's Property

Plaintiff also alleges that Sheriff Hill was present at her home during her two prior arrests and that he allowed one or both homes to be partially destroyed and left open and unattended after her arrests, resulting in the loss of her property from her home(s), including a vehicle.  (Doc. 14 at 3-4).  Because, however, Plaintiff has an adequate post-deprivation remedy regarding the damage to or loss of her property, she

---

[4]Plaintiff purports to sue Sheriff Hill and Clayton County under the Georgia Tort Claims Act ("GTCA"), but that effort is unavailing.  *See Ratliff v. McDonald*, 756 S.E.2d 569, 574 n.5 (Ga. Ct. App. 2014) ("[T]he waiver of sovereign immunity contained in [the GTCA] does not apply to counties. O.C.G.A. § 50-21-22 (5). *Currid v. DeKalb State Court Probation Dept.*, 674 S.E.2d 894, 897 (Ga. 2009). And under the GTCA, sheriffs and their employees are treated as county officers or employees. *Nichols v. Prather*, 650 S.E.2d 380, 385 (Ga. Ct. App. 2007)." (internal quotations omitted) (citations altered)); *see id.* at 574 (concluding that plaintiff's claim against the sheriff in his official capacity "for respondeat superior is barred by sovereign immunity").

may not proceed against Sheriff Hill on this claim.

A § 1983 plaintiff can establish a violation of the Due Process Clause of the Fourteenth Amendment by showing that a state actor has deprived him or her of a property interest without due process of law. *See McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (*en banc*). "Property interests are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005) (internal quotations omitted) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). If state law provides an adequate post-deprivation remedy for a state actor's intentional taking of property, there is no due process violation. *See McKinney*, 20 F.3d at 1562-63 (stating that claimant who alleges that state actor deprived him of property "has not suffered a *violation* of his procedural due process rights unless and until the State . . . refuses to make available a means to remedy the deprivation"). The State of Georgia has made such a remedy available: "a civil cause of action for the wrongful deprivation of personal property" brought under O.C.G.A. § 51-10-1. *See Byrd v. Stewart*, 811 F.2d 554, 555 n.1 (11th Cir. 1987); *Grant v. Newsome*, 411 S.E.2d 796, 797-98 (Ga. App. 1991) (stating that § 51-10-1 "authorizes the recovery of damages where a government

16

official, without lawful authority, has temporarily deprived an individual of his or her property").

Plaintiff has failed to state a Fourteenth Amendment claim for relief based on the alleged loss or destruction of her property. *See Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 531 (1984), to the effect that "an unauthorized *intentional* deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the 14th Amendment if a meaningful post-deprivation remedy for the loss is available" because "[t]he state's action is not complete unless and until it refuses to provide a post-deprivation remedy").

This Court has summarized the law that controls Plaintiff's potential due process claim as follows:

> The Supreme Court has held in two cases that property deprivations by prison officials do not implicate the Fourteenth Amendment if caused by a *negligent* act, *see Daniels v. Williams*, 474 U.S. 327 (1986), or if caused by an *intentional* deprivation by a prison employee where the state has provided a meaningful post-deprivation remedy for the loss. *Hudson*, 468 U.S. at 531.  Here, the Georgia Tort Claims Act, see O.C.G.A. § 50-21-20 *et seq.*, and Georgia's law of trover and conversion, see O.C.G.A. § 51-10-1, provide a constitutionally adequate remedy to redress the [loss or] destruction of personal property by a state officer. The availability of those remedies precludes Plaintiff's claim that he was intentionally deprived of his property without due process. *See Newsome*,

17

> 411 S.E.2d at 797-98 (finding O.C.G.A. § 51-10-1 and O.C.G.A. § 9-11-69 are adequate post-deprivation remedies that preclude prisoner's due process claim alleging property loss); *see also Stewart*, 811 F.2d at 555 n.1 (finding that Georgia "has provided an adequate post deprivation remedy when a plaintiff claims that the state has retained his property without due process of law"); *Price v. Busbee*, No. 5:04-CV-313-CAR, 2006 U.S. Dist. LEXIS 8159, 2006 WL 435670, at *4 (M.D. Ga. Feb. 21, 2006) (concluding that Georgia Tort Claims Act provided adequate post-deprivation remedy to prisoner and thus precluded claim that theft by officials of a list of phone numbers and personal mail constituted violation of due process).

*Daker v. Ferrero*, 475 F. Supp. 2d 1325, 1358 n.17 (N.D. Ga. 2007) (citations altered or omitted) (emphasis added), *vacated in part on other grounds by Daker v. Ferrero*, 506 F. Supp. 2d 1295 (N.D. Ga. 2007); *see also Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents*, 633 F.3d 1297, 1317 (11th Cir. 2011) ("So long as the State provides adequate post-deprivation remedies, due process d[oes] not require pre-deprivation hearings . . . where the deprivation is the result of either a negligent or an intentional deprivation of property." (internal quotations omitted)); *Pacesetter Apparel, Inc. v. Cobb County*, 374 Fed. Appx. 910, 912 (11th Cir. 2010) ("Under the *Parratt-Hudson* doctrine, when a deprivation of property is random and unauthorized, [a]ll that due process requires . . . is a post-deprivation means of redress for property deprivations satisfy[ing] the requirements of procedural due process.  The doctrine extends to both negligent and intentional deprivations by state officials." (citations and internal

18

quotations omitted)).

Because Georgia law provides a post-deprivation remedy to Plaintiff for the alleged damage to her home and/or loss of her personal property, these allegations fail to state a viable claim for relief.

> Georgia law provides a cause of action for injuries to property. *See* O.C.G.A. §§ 51-10-1 through 51-10-6; *Case v. Eslinger*, 555 F.3d 1317, 1331 (11th Cir. 2009) (finding no procedural due process violation because Georgia provides an adequate post-deprivation remedy in O.C.G.A. § 51-10-1). Therefore, this Court concludes that Plaintiff's allegations concerning the possible loss or destruction of his property do not state an actionable claim under § 1983.

*Mayo v. Fields*, No. 1:10-CV-1607-TWT, 2010 U.S. Dist. LEXIS 67738, at *11 (N.D. Ga. July 8, 2010); *see also* O.C.G.A. § 51-10-1 ("The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies."); O.C.G.A. § 51-10-3 ("Any unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered."); Title 51 (Torts) Chapter 9 (Injuries to Real Estate) O.C.G.A. § 51-9-1 ("The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie.").

III.   **Conclusion**

19

### A.      Disposition of Plaintiff's Claims

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's claims against Sheriff Hill be allowed to proceed against the Sheriff in his individual supervisory capacity based on his alleged involvement in creating and enforcing, or at least failing to correct, the following: (1) the alleged Jail policy allowing the use of excessive force against Jail inmates; and (2) Plaintiff's allegedly unconstitutional conditions of confinement at the Jail, as set forth in detail above.

**IT IS RECOMMENDED** that the following claims be **DISMISSED**: (1) Plaintiff's claim against Sheriff Hill regarding her lack of adequate medical care; (2) Plaintiff's prolonged-detention claim against Clayton County and against Sheriff Hill in both his individual and official capacities; and (3) Plaintiff's claims regarding the damage to, or loss of, her property.

### B.      Plaintiff's Consolidated Complaint and Service of Process

**IT IS FURTHER ORDERED** that **within 20 days** of the entry date of this Order, Plaintiff must submit a consolidated complaint setting forth all of the claims that this Court has allowed to proceed against all of the Defendants, both within this Order and Report and Recommendation and previously.  (*See* Docs. 10, 20).

As the Court has allowed at least some of Plaintiff's claims to proceed against

each of the four named Defendants (Palmer, Smith, Hiers and Hill), the Clerk **SHALL** send Plaintiff a USM 285 form and summons for each of these four Defendants. Plaintiff **SHALL** complete a USM 285 form and summons for each Defendant and return the forms to the Clerk of Court **within 20 days** of the entry date of this Order. Plaintiff is **WARNED** that failure to comply in a timely manner could result in the dismissal of this civil action. The Clerk **SHALL** resubmit this action to the undersigned if Plaintiff fails to comply.

*Upon receipt of the service waiver forms and of Plaintiff's consolidated complaint, and upon the Court's approval of Plaintiff's non-prisoner fee arrangements*, the Clerk **SHALL** prepare a service waiver package for each Defendant for whom Plaintiff has completed the forms. The service waiver package must include two (2) Notice of Lawsuit and Request for Waiver of Service of Summons forms (prepared by the Clerk), two (2) Waiver of Service of Summons forms (prepared by the Clerk), an envelope addressed to the Clerk of Court with adequate first class postage for use by each Defendant for return of the waiver form, one (1) copy of the *consolidated* complaint, and one (1) copy of this Order. The Clerk **SHALL** retain the USM 285 form and summons for each Defendant.

The Clerk **SHALL** complete the lower portion of the Notice of Lawsuit and

Request for Waiver form and mail a completed service waiver package to each Defendant.  Defendants have a duty to avoid unnecessary costs of serving the summons.  If a Defendant fails to comply with the request for waiver of service, that Defendant must bear the costs of personal service unless good cause can be shown for failure to return the Waiver of Service form.

If a Defendant does not return an executed Waiver of Service form to the Clerk of Court **within 35 days** following the date the service waiver package is mailed, the Clerk **SHALL** prepare and transmit to the U.S. Marshal's Service a service package for that Defendant.  The service package must include the USM 285 form, the summons, and one (1) copy of the *consolidated* complaint. Upon receipt of the service package(s), the U.S. Marshal's Service **SHALL** personally serve that Defendant.  The executed waiver form or the completed USM 285 form **SHALL** be filed with the Clerk.

Plaintiff **SHALL** serve upon each Defendant or each Defendant's counsel a copy of every additional pleading or other document that is filed with the Clerk of Court. Each pleading or other document filed with the Clerk **SHALL** include a certificate stating the date on which an accurate copy of that paper was mailed to each Defendant or each Defendant's counsel.  This Court will disregard any submitted

22

papers which have not been properly filed with the Clerk or which do not include a certificate of service. Plaintiff **SHALL** also keep the Court and each Defendant advised of his current address at all times during the pendency of this action. Plaintiff is **ADMONISHED** that the failure to do so may result in the dismissal of this action.

### C.    Plaintiff's Motions for Appointment of Counsel and for Discovery

Plaintiff seeks appointment of counsel. (Doc. 16). To date, however, Plaintiff has presented her claims adequately. And the Court does not find that the facts or issues in this case are so complex as to warrant appointment of counsel at this time. *See Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) (noting that appointment of counsel in civil cases is "a privilege justified only by exceptional circumstances, such as the presence of facts and legal issues . . . so novel or complex as to require the assistance of a trained practitioner") (internal quotations omitted); *see also Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (applying same principles to "prisoner pursuing a section 1983 action, [who] has no absolute constitutional right to the appointment of counsel"). Plaintiff's motion for appointment of counsel (Doc. 16) is **DENIED without prejudice**. Plaintiff's motion for discovery (Doc. 19) is premature and is therefore also **DENIED**.

The parties are **ADVISED** that this case is currently assigned to a zero-month

discovery track.

      **SO ORDERED and RECOMMENDED** this 12th day of June, 2015.


_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

24